**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

FELICIA MOYER,                                  :        CIVIL ACTION
                                                :
          Plaintiff                             :        No. _____
                                                :
     v.                                         :
                                                :
WASTE CONNECTIONS OF                            :
PENNSYLVANIA, INC.,                             :
and                                             :
WASTE CONNECTIONS                               :
US INC.,                                        :
                                                :        **JURY TRIAL DEMANDED**
          Defendants.                           :
_____               :

**<u>COMPLAINT AND JURY DEMAND</u>**

**I.        <u>PREMLIMINARY STATEMENT</u>**

1.        This is an action for an award of damages, attorneys' fees and other relief

on behalf of Plaintiff, Felicia Moyer ("Plaintiff Moyer"), a former employee of

Defendants Waste Connections of Pennsylvania, Inc. and Waste Connections US Inc.

(collectively referred to as "Defendants") who has been harmed by the Defendants'

discriminatory and retaliatory employment practices.

2.        This action arises under Title VII of the Civil Rights Act of 1964 and 1991,

as amended, 42 U.S.C. §2000e <u>et</u> <u>seq.</u>  ("Title VII"), Section 1981 of the Civil Rights Act

of 1866, 42 U.S.C. §1981 ("Section 1981"), and the Pennsylvania Human Relations Act,

43 P.S. §951 <u>et</u> <u>seq.</u> ("PHRA")[1].

---

[1] Plaintiff Moyer's claims under the PHRA are referenced herein for notice purposes.  She is required to wait one full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff Moyer must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under Title VII.  Plaintiff Moyer's PHRA claims will mirror identically her claims arising under Title VII.

## II.    JURISDICTION AND VENUE

3.    The jurisdiction of this Court is invoked, and venue is proper in this judicial district, pursuant to 28 U.S.C.  §§1331 and 1391 as Plaintiff Moyer's claims are substantively based on Title VII and Section 1981.

4.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Plaintiff Moyer's claims arising under the PHRA.

5.    All conditions precedent to the institution of this lawsuit have been fulfilled.  On January 28, 2026, a Notice of Right to Sue was issued by the United States Equal Employment Opportunity Commission ("EEOC"), and this action has been filed within ninety (90) days of receipt of said notice.

6.    Plaintiff Moyer has satisfied all other jurisdictional prerequisites to the maintenance of this action.

## III.    PARTIES

7.    Plaintiff Felicia Moyer ("Plaintiff Moyer") is a thirty-eight (38) year old female citizen of the Commonwealth of Pennsylvania, residing therein at 128 Sycamore Drive, Honey Brook, Pennsylvania 19344.

8.    Defendant Waste Connections of Pennsylvania, Inc. is a corporation duly organized and existing under the laws of the State of Delaware, maintaining a place of business located at 1600 Chestnut Tree Road, Honey Brook, Pennsylvania 19344.

9.    Defendant Waste Connections US Inc. is a corporation duly organized and existing under the laws of the State of Delaware, maintaining a principal place of business located at 3 Waterway Square Place, Suite 110, The Woodlands, Texas 77380.

10.    Because of their interrelation of operations, common ownership or

management, centralized control of labor relations, common ownership or financial controls, and other factors, Defendants are sufficiently interrelated and integrated in their activities, labor relations, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

11.    Defendants provide solid waste collection, transfer, disposal and recycling services for residential, commercial, and industrial customers across the United States and Canada.

12.    At all times relevant hereto, Defendants acted through their agents, servants, and employees, who acted within the scope of their authority, course of employment, and under the direct control of Defendants.

13.    At all times material herein, Defendants have been "persons" and "employers" as defined under Title VII, Section 1981, and the PHRA and have been, and are, subject to the provisions of each said Act.

14.    At all times material herein, Plaintiff Moyer has been an "employee" as defined under Title VII, Section 1981, and the PHRA and has been, and is, entitled to the protections of each said Act.

## IV.    STATEMENT OF FACTS

15.    Plaintiff Moyer was employed by the Defendants from on or about October 4, 2021 until on or about January 14, 2026, the date of her unlawful termination.

16.    During her tenure of employment, Plaintiff Moyer held the position of Roll-Off Truck Driver.  In that capacity, her duties included, but were not limited to, hauling large dumpsters for waste and recycling purposes.

17. Importantly, at no time during Plaintiff Moyer's employment with Defendants did the company provide her with any training on what the employer considered to be workplace sex discrimination, sexual harassment, or retaliation or any company policies related thereto.  Nor did the Defendants provide Plaintiff Moyer with any instruction on what to do if she believed she was the victim of workplace sex discrimination, sexual harassment, or retaliation.

18. As a Roll-Off Truck Driver, Plaintiff Moyer was supervised by Michael Barrett ("Barrett"), Dispatcher, Jay D'Angelo ("D'Angelo"), Operations Supervisor, Mudge Welch ("Welch"), Operations Supervisor, and Joe Blosenski ("Blosenski"), Operations Manager.

19. At all times relevant hereto, Plaintiff Moyer performed her job responsibilities in a dutiful and competent manner and maintained a satisfactory job performance rating with the Defendants.

20. During the course of Plaintiff Moyer's employment with Defendants, various members of management, including, but not limited to, Barrett, D'Angelo, and Blosenski, subjected her to a hostile work environment through various instances of severe and pervasive sex discrimination and sexual harassment in the workplace.

21. By way of example, on a regular basis and almost every time that Barrett came into contact with Plaintiff Moyer at work, he referred to her by sexually demeaning and offensive monikers such as "Baby," "Sweetheart," and "Honey."  Barrett did not refer to other similarly situated male Roll-Off Truck Drivers by those names.  Barrett repeatedly made such remarks to Plaintiff Moyer over the telephone while she drove her

truck, as well as during morning safety meetings, causing her grave embarrassment and discomfort and adversely impacting upon her ability to focus and perform her job.

22. In response to the sexually-offensive, demeaning, and harassing name calling, Plaintiff Moyer repeatedly told Barrett to cease and desist and that his comments made her feel uncomfortable, however he continued unabated until such time as Defendants terminated her employment.

23. As further harassment due to her sex, Blosenski called Plaintiff Moyer a "Bitch" and "Stupid Bitch" regularly, at least one time per month for approximately the final year of Plaintiff Moyer's employment with Defendants. Blosenski made said comments to Plaintiff Moyer while together in the Defendants' office and in the presence of other coworkers and managers, who failed to intervene on Plaintiff Moyer's behalf to cause the harassment to cease. Blosenski did not use similarly offensive or demeaning names when referring to Plaintiff Moyer's male counterparts.

24. Blosenski engaged in rampant rumor spreading at work regarding Plaintiff Moyer's alleged sexual proclivities, falsely telling coworkers and managers that Plaintiff Moyer was "fucking" another employee and that all the men at work should be "getting a turn" with Plaintiff Moyer. Importantly, at no time during her employment with Defendants did Plaintiff Moyer ever have any romantic or sexual relationship with anyone at work.

25. On June 15, 2025, Plaintiff Moyer registered a complaint of sex-based harassment with Ronald Mittelstaedt ("Mittelstaedt"), President and CEO, specifically reporting that Blosenski referred to her as a "Stupid Bitch." Notwithstanding Plaintiff Moyer's protestations, the Defendants failed to conduct an investigation and likewise

5

failed to take steps to cause the harassment to cease.  As a result, Blosenski continued his sex-based harassment of Plaintiff Moyer unabated.

26.    As further sexual harassment, on one occasion, D'Angelo directed Plaintiff Moyer to meet with him privately by his truck.  During the meeting, D'Angelo told her that anything he says to her should not be repeated.  D'Angelo proceeded to tell Plaintiff Moyer that he needed a "mistress," implying that Plaintiff Moyer fill that role for him.  Plaintiff Moyer told him no.  In response, D'Angelo told Plaintiff Moyer that he loved her, had her back, and that he would protect her from workplace gossip about them having "relations."

27.    During a meeting in D'Angelo's office, he probed Plaintiff Moyer about her relationship with her husband and asked if she had an "open marriage," again insinuating that Plaintiff Moyer be his mistress.  Plaintiff Moyer responded that she "d[id] not feel good" about the subject matter of the discussion and abruptly left his office.

28.    As further sexual harassment, D'Angelo hugged Plaintiff Moyer at work, making her feel extremely uncomfortable.

29.    During at least four (4) ride-along drives in which D'Angelo allegedly evaluated Plaintiff Moyer's performance, D'Angelo sprayed cologne on himself while stating to Plaintiff Moyer in a sexually suggestive manner, "I'm trying to look good for you."

30.    Other individuals took notice of the attention D'Angelo directed at Plaintiff Moyer, with one such individual stating to Plaintiff Moyer, "Jay is here again.  He can't get enough of you."

31.     On June 18, 2025, Plaintiff Moyer registered another complaint of sexual harassment with Paul Dias ("Dias"), Regional Manager.   Plaintiff Moyer recounted to Dias all of the aforesaid incidents of sexual harassment by Blosenski and D'Angelo. Notwithstanding Plaintiff Moyer's protestations, no corrective action was taken.

32.     While prior to these incidents, Plaintiff Moyer enjoyed a positive working relationship with D'Angelo, after Plaintiff Moyer expressed displeasure with his sexually suggestive and probing banter, and after she reported him for sexual harassment, his cordiality towards her vanished.

33.     At that juncture, D'Angelo began to retaliate against Plaintiff Moyer by treating her rudely and with disrespect.  D'Angelo repeatedly yelled at Plaintiff Moyer in front of other employees without any justification and with the express purpose to humiliate her in the workplace.  He did not treat other similarly situated male employees in such a degrading and hostile fashion.

34.     In addition to the aforesaid sexual harassment, management also subjected Plaintiff Moyer to differential treatment on the basis of her sex.

35.     For example, Barrett continually assigned Plaintiff Moyer harder, less desirable, and farther driving as compared to her male counterparts including the Scott Middle School and Buckridge Carpentry routes.

36.     As further sex discrimination, Barrett frequently hung up the telephone and dismissed Plaintiff Moyer mid-conversation.  Barrett did not treat similarly situated males in this fashion.

37.     In addition to engaging in sexual harassment and sex discrimination, Defendants' Caucasian management treated minorities in a discriminatory manner in the presence of Plaintiff Moyer and other subordinate employees.

38.     By way of example, Barrett and D'Angelo frequently spoke in a demeaning manner about minority employees, including Steve Rudd ("Rudd") and Foster Robinson ("Robinson"), both African-American Roll-Off Truck Drivers, claiming that they were "playing the race card."

39.     As further evidence of race-based animus, D'Angelo referred to Robinson as a "stupid nigger."

40.     Because Caucasian members of management spoke openly in the workplace with disdain about minority employees, they encouraged subordinate employees to also treat minorities with similar disrespect due to their race.

41.     For example, Curt Wise ("Wise"), a Caucasian Roll-Off Truck Driver, repeatedly stated over the company radio, "Press One for English" after Hispanic Drivers spoke on the radio.  Defendants' management listened to the radio, yet never directed Wise to cease and desist.

42.     Wise additionally made racially offensive remarks about Robinson, stating "this must be a Black thing" in reference to discussions he had with the said Robinson.

43.     By way of further example, James Mimm ("Mimm"), a Caucasian Roll-Off Truck Driver, repeatedly stated, "Go back to your country" to minority employees including Raymart Montalban ("Montalban"), a Filipino Roll-Off Truck Driver.  Mimm additionally made derogatory jokes about Montalban being "Chinese" when in reality he is Filipino.

44.    Plaintiff Moyer protested the racially hostile and offensive comments of both management and her aforesaid coworkers to D'Angelo during the Summer of 2025, stating that the racial harassment was inappropriate and made her feel uncomfortable in the workplace.  D'Angelo refused to stop making racial comments himself and further failed to take any remedial action to cause the racial harassment by others in the workplace to cease.

45.    Due to escalating sexual harassment, on January 4, 2026, Plaintiff Moyer registered a complaint with Evelyn Aponte ("Aponte"), Senior Human Resources Manager, Eastern Region.  Specifically, Plaintiff Moyer reported to Aponte that she had been called a "Stupid Bitch" by Blosenski.

46.    Thereafter, on or about January 6, 2026, Plaintiff Moyer spoke with Aponte and provided additional details regarding workplace sexual harassment directed at her by Barrett, D'Angelo, and Blosenski.  Plaintiff Moyer also reported to Aponte that members of management and several coworkers were fostering a racially hostile work environment targeting minorities that she and other employees found to be offensive.

47.    Upon information and belief, Aponte failed to conduct any investigation and likewise failed to take any corrective action to cause the harassment and hostile work environment to cease.

48.    On January 12, 2026, while driving her route, Plaintiff Moyer's truck got stuck in mud.  Plaintiff Moyer telephoned D'Angelo for assistance.  In retaliation for reporting him to Aponte for racial and sexual harassment, D'Angelo, in turn, falsely reported to Welch that Plaintiff Moyer mishandled her truck, causing the incident.

49.     On January 14, 2026, Welch advised Plaintiff Moyer that Defendants had terminated her employment, effective immediately, allegedly due to the incident of January 12, 2026.

50.     Plaintiff Moyer believes and avers that the Defendants' articulated reason for her termination is false and pretextual and that Defendants actually terminated her employment due to her sex (female) and/or in retaliation for protesting unlawful sexual harassment and racial harassment in the workplace.

51.     As evidence of pretext, Defendants subjected Plaintiff Moyer to harsher discipline than other similarly situated male employees, as well as other female employees who did not engage in protected activity.

52.     By way of example, CJ Kneis ("Kneis"), a male Roll-Off Truck Driver, drove his truck through electrical wires after coming into contact with them, pulling the wires down from a residential home.  Despite the severity of the incident and the damage to personal property, Defendants did not similarly terminate Kneis' employment.

53.     Another male, Barrett, when employed by Defendants as a Roll-Off Truck Driver, drove his truck on the road while allowing wet concrete to pour out from the truck, causing a police stop, receipt of traffic violations, and DOT involvement.  Despite the severity of the incident and tickets received, Defendants did not similarly terminate Barrett's employment.

54.     Mimm, a male Roll-Off Truck Driver, unlawfully backed his truck into an intersection, causing an accident with another vehicle.  Mimm was also caught using his cell phone while driving a company vehicle.  Despite the severity of these incidents, Defendants did not similarly terminate Mimm's employment.

10

55.     Page Liskey ("Liskey"), a male Roll-Off Truck Driver, caused an accident while driving his company truck, damaging the truck itself after flipping the truck over and bending the frame and bumper, as well as significant damage to personal property including a key code pad and an iron gate (costing the Defendants over $5,000 in property damage).  Despite the severity of this incident, Defendants did not similarly terminate Liskey, but instead issued him a written warning for his misconduct.

56.     Hollie Arnold ("Arnold"), a female Roll-Off Truck Driver who did not engage in any protected activity, was involved in more than five (5) vehicular accidents while driving her company truck.  Despite the frequency and severity of these incidents, Defendants did not similarly terminate Arnold, but instead issued her lesser discipline in the form of a suspension.

57.     Paul Riley ("Riley"), a male Roll-Off Truck Driver, received a DUI and lost his driver's license for a period of one (1) year.  Despite the severity of the incident, Defendants did not terminate Riley.  Instead, Defendants offered Riley odd jobs as an opportunity to keep his job until such time as his license was restored.

## COUNT I
### (Title VII – Sex Discrimination, Hostile Work Environment Sexual Harassment, Retaliation)
### Plaintiff Moyer v. Defendants

58.     Plaintiff Moyer incorporates by reference paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     The actions of Defendants, through their agents, servants, and employees, in subjecting Plaintiff Moyer to sex discrimination and hostile work environment through severe and pervasive sexual harassment, and in retaliating against her for protesting

unlawful sexual and racial harassment in the workplace, ultimately resulting in the termination of her employment, constituted a violation of Title VII.

60.    As a direct result of the aforesaid discriminatory and retaliatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff Moyer sustained permanent and irreparable harm, resulting in her termination from employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

61.    As a further direct result of the aforesaid discriminatory and retaliatory employment practices engaged in by the Defendants in violation of Title VII, Plaintiff Moyer suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## COUNT II
### (Section 1981 – Retaliation)
### Plaintiff Moyer v. Defendants

62.    Plaintiff Moyer incorporates by reference paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.    The actions of Defendants, through their agents, servants, and employees, in retaliating against Plaintiff Moyer for protesting unlawful racial harassment in the workplace, ultimately resulting in the termination of her employment, constituted a violation of Section 1981.

64.    As a direct result of the aforesaid retaliatory employment practices engaged in by the Defendants in violation of Section 1981, Plaintiff Moyer sustained permanent and irreparable harm, resulting in her termination from employment, which caused her to

sustain a loss of earnings, plus the value of certain benefits, plus loss of future earning power, plus back pay, front pay, and interest due thereon.

65.     As a further direct result of the aforesaid retaliatory employment practices engaged in by the Defendants in violation of Section 1981, Plaintiff Moyer suffered severe emotional distress, embarrassment, humiliation, and loss of self-esteem.

## PRAYER FOR RELIEF

66.     Plaintiff Moyer incorporates by reference paragraphs 1 through 65 of this Complaint as though fully set forth herein.

**WHEREFORE**, Plaintiff Moyer requests that this Court enter judgment in her favor and against the Defendants, and Order that:

a.      Defendants compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits she would have received had it not been for Defendants' unlawful actions, as aforesaid, including, but not limited to, back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

b.     Defendants pay to Plaintiff punitive damages as permitted by applicable law, in an amount believed by the Court or the trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

c.     Defendants pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses as allowable;

13

d.      Defendants pay to Plaintiff pre and post judgment interest, costs of suit, and

attorney and expert witness fees as allowed by law;

d.      The Court award such other relief as is deemed just and proper.

## JURY DEMAND

Plaintiff Moyer demands trial by jury.


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**


By:  _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Dated: March 30, 2026

14

## **VERIFICATION**

The undersigned states that the facts in the foregoing Complaint and Jury Demand are true and correct to the best of her knowledge, information and belief.  The undersigned understands that any intentionally false statements herein are subject to criminal penalties relating to sworn and unsworn statements.


Dated: 3/27/2026

_____
Felicia Moyer

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Felicia Moyer | : | CIVIL ACTION |
| v. | : | |
| Waste Connections of Pennsylvania, Inc., et al. : | | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 3/30/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?          Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?          Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?          Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.          Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*  ***Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.*  ***Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases:  *(Please specify)*_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MOYER, FELICIA

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

## DEFENDANTS

WASTE CONNECTIONS OF PENNSYLVANIA, INC., ET AL.

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [X] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000); Section 1981 (42USC1981)

Brief description of cause:
Violations of Title VII, Section 1981 and the PHRA.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    3/30/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____