**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FELICIA MOYER** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.   26-2070** |
| | : | |
| **WASTE CONNECTIONS OF** | : | |
| **PENNSYLVANIA, INC., and WASTE** | : | |
| **CONNECTIONS US, INC., and A.J.** | : | |
| **BLOSENSKI, INC.** | : | |

**<u>MEMORANDUM</u>**

**MURPHY, J.**                                                                                           **July 10, 2026**

This is an employment discrimination case alleging sex-based discrimination, harassment, and retaliation.  The defendants are three corporate entities who, according to the amended complaint, share a business address and operate interrelatedly with respect to their finances, offices and executives, labor relations, and employment-related activities.  At this point, it is not clear exactly how these defendants internally operate or who was responsible for what with respect to the plaintiff's employment.  And it is hard to imagine that any typical employee could answer those questions either.  The defendants think this lack of clarity is fatal, asserting that the plaintiff's pleadings are deficient under Rule 12(b)(6) because they lack specific allegations against each defendant and instead amount to improper group or shotgun pleading.  The plaintiff insists that she has plausibly pled that the defendants are a single employer or joint employers, and that the question of these defendants' internal operations should be answered during discovery (if it ever becomes a material issue in this dispute, which seems doubtful).  Because the plaintiff has done enough to survive dismissal based on her single employer and joint employer theories, defendants' motion to dismiss is denied.

## I.    FACTUAL BACKGROUND

According to the allegations of the complaint, which we must accept for these purposes, from approximately October 4, 2021, until January 14, 2026, plaintiff Felicia Moyer worked as a roll-off truck driver for defendants Waste Connections of Pennsylvania, Inc., Waste Connections US, Inc. (Waste Connections defendants), and/or A.J. Blosenski, Inc. (A.J. Blosenski).[1]  DI 7 at ¶¶ 16-17.  She was paid by and issued W-2 forms by a Waste Connections entity, received a Waste Connections employee handbook, and communicated with Waste Connections corporate management and human resources personnel regarding her employment.  *Id.* at ¶ 18.  The Waste Connections defendants and A.J. Blosenski operated interrelatedly regarding labor relations, management, payroll, and human resources.  *Id.*  While employed by defendants, various management personnel subjected her to a hostile work environment through their pervasive and severe acts of sex discrimination and sexual harassment directed toward her.  *Id.* at ¶ 22.  These instances included sexually demeaning and offensive comments, monikers, and rumors regarding Ms. Moyer, unwanted touching, and romantic propositions.  *Id.* at ¶¶ 23, 25-26, 28-31.  Ms. Moyer repeatedly asked for this conduct to stop, to no avail.  *Id.* at ¶¶ 24, 28-29.  She filed a sex-based harassment complaint with Ronald Mittelstaedt, President and CEO of the Waste Connections defendants and President of A.J. Blosenski, a second complaint with Paul Dias, Regional Manager, and a third complaint with Evelyn Aponte, Senior Human Resources Manager for the Eastern Region; however, Ms. Moyer maintains that the discrimination against her continued.  *Id.* at ¶¶ 27, 33, 47-49.  Ms. Moyer contends that she faced retaliation from

---

[1] In her amended complaint, Ms. Moyer asserts that defendants may be considered a single employer and/or joint employers at this stage of litigation.  DI 7 at ¶ 11.

management due to her complaints, including degrading and hostile treatment, less desirable assignments, and her ultimate termination on January 14, 2026, after her truck got stuck in the mud. *Id.* at ¶¶ 35-38, 50-52. She provides several examples of similarly situated employees whom she avers were disciplined less harshly compared to her, despite committing more serious infractions. *Id.* at ¶¶ 53-59. Ms. Moyer also alleges that white members of management engaged in racial discrimination against her coworkers, of which she also complained. *Id.* at ¶¶ 39-46, 48.

Based on this alleged conduct, Ms. Moyer filed an amended complaint against defendants, in which she brings a claim under Title VII of the Civil Rights Act of 1964 and 1991 (Title VII) for sex discrimination, hostile work environment, sexual harassment, and retaliation, as well as a claim under Section 1981 of the Civil Rights Act of 1866 (Section 1981).[2] *Id.* at ¶¶ 2, 60-67; 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981. Defendants filed a motion to dismiss Ms. Moyer's amended complaint, to which we now turn. DI 19.

## II.    MOTION AT ISSUE

Defendants seek dismissal of Ms. Moyer's amended complaint under Fed. R. Civ. Pro. 12(b)(6). DI 19. They aver that the amended complaint "improperly groups all [d]efendants together, without alleging the specific involvement of each [d]efendant that entitles [p]laintiff to relief against them, in violation of Federal Rule of Civil Procedure 8." DI 19-1 at 1. Defendants characterize Ms. Moyer's filing as a "shotgun [c]omplaint" that raises "threadbare legal

---

[2] Ms. Moyer also asserts that her action arises under the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 et seq., which she does for notice purposes because one year had not passed from the date of her dual-filing with the Equal Employment Opportunity Commission (EEOC) when she filed her amended complaint. DI 7 at ¶ 2, n.1. She states that her forthcoming PHRA claims will mirror her Title VII claims. *Id.*

conclusions that all [d]efendants may be treated as a 'single employer and/or joint employer' due to their alleged 'interrelation of operations, common management, centralized control of labor operations, common ownership or financial control, overlapping officers and executives, shared business address as between certain [d]efendants, and other factors'—all without sufficient factual support." *Id.* at 2-3. They assert that Ms. Moyer's allegation "that she was paid by, received an employee handbook from, and communicated with 'a Waste Connections entity'" is insufficient to state a claim against the defendants, noting her failure to allege the specific entity which employed her or was involved in the alleged conduct. *Id.* at 2. Defendants insist that it is not enough for her to assert "upon information and belief" that the defendants are "interrelated" because we do not know who allegedly did what. *Id.* Moreover, defendants argue that Ms. Moyer impermissibly attempts to rely upon new facts in her response in opposition to expand the facts respecting defendants' purported interrelatedness. DI 21 at 2-4. In their view, Ms. Moyer's complaint does not do enough to demonstrate plausible liability against each defendant, so it must be dismissed. *Id.* at 1.

Ms. Moyer opposes defendants' motion to dismiss. DI 20. She asserts that defendants' argument regarding internal employment functions is premature, and that instead this is an issue for discovery. DI 20-2 at 2. Ms. Moyer contends that she sufficiently pled single-employer and joint-employer liability, pointing to her allegations that (1) defendants were interrelated respecting human resources, payroll, labor relations, and management; (2) she received a Waste Connections employee handbook; and (3) she communicated with personnel from Waste Connections corporate management and human resources regarding her employment. *Id.* at 2, 8. And she emphasizes that her workplace harassment complaint to Ronald Mittelstaedt, who was

the President and CEO of the Waste Connections defendants and President of A.J. Blosenski, supports a plausible inference that there was centralized control over labor relations and common management among the defendants. *Id.* at 8-9. To the extent that defendants dispute the "internal allocation of employment responsibilities[,]" Ms. Moyer insists that issue is not a basis for pre-discovery dismissal. *Id.* at 9. Notably, she posits that defendants possess the very entity-specific records that they claim are missing: W-2 and payroll records, employee policies and handbooks, human resources and corporate management communications, employee records, labor relations documents, and complaint-handling documents. *Id.* at 14.

Ms. Moyer also argues that she plausibly pled joint-employer liability, pointing to her allegations that a Waste Connections entity (1) paid her; (2) issued her W-2 forms; (3) provided the employee handbook for the workplace; and (4) participated in her employment matters through corporate management and human resources personnel. *Id.* at 9-10. According to her, such facts directly bear on issues of employee records, workplace rules, compensation, human resources oversight, and employment-related control — all matters relevant to joint-employer liability. *Id.* at 10-11. And she highlights A.J. Blosenski's website, which she claims directs applicants from its "Employment" and "Jobs" links to the "Waste Connections" careers platform, without distinguishing between the Waste Connections entities. *Id.* at 10.

As to defendants' characterization of her amended complaint as a shotgun pleading, Ms. Moyer maintains that her complaint gives defendants adequate notice of the claims against them and the grounds for such claims. *Id.* at 11-14. She insists that she identifies the asserted statutory claims, protected conduct, alleged workplace harassment and discrimination, retaliatory termination, and employment relationship underlying defendants' liability; according to plaintiff,

5

"[d]efendants know what the claims are, who [p]laintiff alleges employed her, and why [p]laintiff alleges the Waste Connections entities are liable[.]" *Id.* at 12.  And Ms. Moyer maintains that she has not engaged in improper group pleading, noting that she instead alleges that defendants operated as a single and/or joint employer.  *Id*. at 12-13.  Finally, and if we determine that the amended complaint is deficient, Ms. Moyer asks for either limited discovery regarding such documents or for leave to amend her complaint.  *Id.* at 14-15.

## III.    STANDARD OF REVIEW

### A.    Rule 12(b)(6) challenges

Parties may seek dismissal of an action against them by asserting that the complaint failed to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, we shall only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (citation omitted).  We also must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant."  *Id.* (citation omitted).  A plaintiff's complaint must state a "plausible claim for relief" to survive dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Whether the complaint satisfies this plausibility standard is a context-specific inquiry which requires us to use our common sense and judicial experience.  *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief."  *Id*. (citation modified) (citation omitted).

IV.    **DISCUSSION**

A.    **We deny defendants' motion to dismiss because Ms. Moyer has sufficiently pled that defendants constitute a single employer or joint employers at this stage of litigation**

Defendants' motion to dismiss is denied because Ms. Moyer has stated plausible claims for relief based on a theory that defendants are either a single employer or joint employers.  First, we reject defendants' characterization of Ms. Moyer's complaint as engaging in impermissible group pleading.  Defendants compare Ms. Moyer's amended complaint to the complaint dismissed in *Salyers v. A.J. Blosenski, Inc.*, 731 F. Supp. 3d 670, 683-84 (E.D. Pa. 2024).  DI 19-1 at 3.  There, the district court dismissed the complaint as "an impermissible form of 'group pleading'" because the complaint failed to sufficiently allege who was responsible for what.  *Salyers*, 731 F. Supp. 3d at 683-84.  The Court noted that the only allegations directed toward Waste Connections US, Inc. regarded "its corporate citizenship and relationship to [A.J. Blosenksi]."  *Id.* at 684.  Indeed, the complaint in that case discussed Waste Connections US, Inc. only as overseeing Waste Connections' operations, where A.J. Blosenski was a wholly-owned subsidiary of Waste Connections.  *Salyers v. A.J. Blosenski, Inc.*, Civ. No. 23-4802 (ECF 22), at ¶¶ 9-10.  But unlike the complaint in *Salyers*, Ms. Moyer's amended complaint does not rely on the parent-subsidiary structure of the businesses and instead provides several reasons for treating them as a single employer and/or joint employers: (1) their interrelated operations; (2) common management; (3) centralized control of their labor relations; (4) common ownership or financial control; (5) overlapping executives and officers; and (6) shared business address.  DI 7 at ¶ 11.  As an example, she highlights that Ronald Mittelstaedt is the President and CEO of the Waste Connections defendants and the President of A.J. Blosenski.  *Id.* at ¶ 27.  Ms. Moyer also asserts that she (1) was paid by a Waste Connections entity; (2) received W-2 forms from a

7

Waste Connections entity; (3) was provided an employee handbook by Waste Connections; and (4) communicated about her employment with Waste Connections human resources and corporate management personnel. *Id.* at ¶ 18. This is not improper group pleading. And such allegations certainly satisfy Rule 8's notice pleading requirements and thus defeat any argument that Ms. Moyer has engaged in shotgun pleading. *See, e.g.*, *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (describing complaints that fail to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2) as "shotgun pleadings") (citing Fed. R. Civ. Pro. 8(a)(2)).

We also conclude that Ms. Moyer's allegations sufficiently establish a single employer or joint employer theory for purposes of Rule 8's notice pleading standard. Fed. R. Civ. Pro. 8. The Third Circuit considers a company and its affiliates to be a single employer under Title VII when (1) a company has split itself into entities consisting of less than 15 employees in order to evade Title VII; (2) a parent company directed the subsidiary's discriminatory act complained of by the plaintiff; or (3) the companies' operations are so united that one company's nominal employees are treated interchangeably with the other company's nominal employees. *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 85-87 (3d Cir. 2003).[3] The third prong, known as the "integrated enterprise theory[,]" focuses "on the degree of operational entanglement" and specifically: "(1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as

---

[3] *Nesbit* addressed a case in which the plaintiff attempted to meet Title VII's "fifteen or more" person requirement by combining two legally distinct entities as a single entity. *Nesbit*, 347 F.3d at 74-75.

one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other." *Id.* at 87; *Plaso v. IJKG, LLC*, 553 Fed. Appx. 199, 206 (3d Cir. 2014). Though not required in the Title VII context, "extensive financial entanglement" between the entities will strengthen the plaintiff's case that they operate as a single entity. *Nesbit*, 347 F.3d at 88.

Somewhat similar is the Third Circuit's test for whether a defendant is a joint employer. That inquiry looks to who paid the employees' salaries, who hired and fired employees, and who exercised control over employees' daily employment activities — alongside other factors. *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213-15 (3d Cir. 2015) (applying the *Darden* factors from *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) to Title VII cases) (citations omitted). No one factor controls. *Urgent v. United States Marshals Serv.*, 704 Fed. Appx. 107, 110 (3d Cir. 2017) (citing *Darden*, 503 U.S. at 324).

Though the pleadings in this case regarding the relationship between the Waste Connections defendants and A.J. Blosenski are not particularly robust, they are enough to survive dismissal. Construed as true and in the light most favorable to Ms. Moyer, the pleadings establish that defendants share a business address, common management, ownership, financial controls, officers, and executives (including Mr. Mittelstaedt). DI 7 at ¶¶ 11, 27. This is quite similar to the complaint that survived dismissal in *Anderson v. Finley Catering Co.*, 218 F. Supp. 3d 417, 419, 422-23 (E.D. Pa. 2016), where the court found that the plaintiff sufficiently pled a single employer or joint employer theory by alleging that the defendants (1) owned and/or operated the other, (2) shared common management, operations, and ownership (citing a specific employee), (3) had centralized control of labor relations, and (4) had common financial controls.

*Id.* at 422.  And Ms. Moyer has pled that a Waste Connections entity paid her, provided her W-2 forms, gave her an employee handbook, and communicated with her about her employment.  DI 7 at ¶ 18.  The allegations regarding an employment relationship with a Waste Connections entity, in combination with the allegations supporting a plausible theory that the defendants have either single employer or joint employer status, satisfy Rule 8's pleading requirements.  Moreover, it would be inappropriate to dismiss Ms. Moyer's complaint prior to beginning discovery, particularly given the fact-specific nature of employment relationships.  *Graves v. Lowery*, 117 F.3d 723, 729 (3d Cir. 1997) ("[T]he precise contours of an employment relationship can only be established by a careful factual inquiry.") (citations omitted); *Anderson*, 218 F. Supp. 3d at 422-23 (citations omitted); *Thompson v. US Airways, Inc.*, 717 F. Supp. 2d 468, 479 (E.D. Pa. 2010) (citation omitted).  Ms. Moyer's complaint survives dismissal.

## V.   CONCLUSION

At this stage of the case, Ms. Moyer has sufficiently pled that defendants constitute either a single employer or joint employers.  She has not engaged in improper group pleading nor the filing of a "shotgun complaint."  And she has not otherwise failed to state a claim for relief under Rule 12(b)(6).  Accordingly, defendants' motion to dismiss Ms. Moyer's amended complaint is denied.  An appropriate order accompanies this memorandum.